**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Derrick THOMAS and Jason A. Scott,
Defendants–Appellants.**

**Nos. 97–4181, 98–1697.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1998.

Decided Oct. 23, 1998.

Jeffrey B. Lang (argued), Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee.

Rodney R. Nordstrom (argued), Peoria, IL, for Thomas.

George F. Taseff, Office of the Federal Public Defender, Peoria, IL, for Scott.

Before POSNER, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

■ Drug enforcement agents gave one of their confidential informants $675 in federal money to buy crack from a suspected drug dealer, defendant Scott. The informant arranged to purchase the crack from Scott, but when he arrived at the place appointed for the transaction Scott and his accomplice, defendant Thomas, robbed him of the "buy" money. The two were convicted of a number of federal crimes arising out of the robbery and given heavy sentences—75 months for Scott and 322 months for Thomas, the difference reflecting the fact that Scott pleaded guilty and testified against Thomas. Their appeals raise several issues but only two have sufficient merit to warrant discussion. The first is that the government failed to prove that the defendants obstructed interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951. It is odd that the government should have proceeded under the Hobbs Act, which requires proof of such obstruction, § 1951(a), since 18 U.S.C. § 2114 (which was not charged) criminalizes the robbery of money owned by the federal government, and the punishment range set by the sentencing guidelines is the same as for violations of the Hobbs Act. See U.S.S.G. § 2B3.1 Commentary; *United States v. Pridgen*, 898 F.2d 1003, 1004 (5th Cir.1990). Nor would the government have to prove that the defendants knew—they plainly did not—that it was federal money they were stealing. E.g., *United States v. Smith*, 489 F.2d 1330, 1334 (7th Cir.1973); *United States v. Sivils*, 960 F.2d 587, 595–96 (6th Cir.1992). These are cases under 18 U.S.C. § 641, but that is merely the theft counterpart of section 2114, and raises the identical issue of knowledge. At argument, the assistant U.S. attorney explained that he had thought that section 2114 punished theft rather than robbery; he had confused 2114 with 641.

■ No matter. The defendants obstructed commerce in a pretty literal sense. The confidential informant was supposed to buy a quantity of crack cocaine from Scott for $675. The cocaine would, the evidence showed, have originated in South America, and would thus have traveled in commerce. By robbing the informant rather than selling him co-

caine, Scott and his accomplice thwarted what would have been a sale in commerce within the meaning of the Hobbs Act. That the amount of cocaine in contemplation was small is irrelevant. The cases involving prosecutions that hinge on proving an effect on interstate commerce hold that the relevant issue is the effect on commerce of the *entire* class of transactions to which the transaction or transactions at issue in the particular case belong, e.g., *Perez v. United States*, 402 U.S. 146, 154–55, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *United States v. Staszcuik*, 517 F.2d 53, 57–58 (7th Cir.1975) (en banc); *United States v. Zizzo*, 120 F.3d 1338, 1350 (7th Cir.1997); *United States v. Robinson*, 119 F.3d 1205, 1211, 1215 (5th Cir.1997)—the effect on commerce of all arsons of a particular type of building (restaurant, apartment house, private home, etc.) rather than the effect of just the individual building that the defendant torched. E.g., *United States v. Hicks*, 106 F.3d 187, 189–90 (7th Cir.1997). Any other rule would leave the federal government helpless to deal with criminal acts that have an individually trivial but cumulatively significant effect on the movement of goods and services across state and international boundaries.

We are mindful of cases in which the robbery of personal items of small value has been held not to obstruct commerce. *United States v. Quigley*, 53 F.3d 909 (8th Cir.1995); *United States v. Collins*, 40 F.3d 95, 100–01 (5th Cir.1994); *United States v. Buffey*, 899 F.2d 1402 (4th Cir.1990); cf. *United States v. Mattson*, 671 F.2d 1020, 1024–25 (7th Cir. 1982); *United States v. Boulahanis*, 677 F.2d 586, 590 (7th Cir.1982). Since the aggregate effect of such robberies on commerce is nontrivial, these cases are in tension with the ones we cited earlier, which insist on aggregation. But their facts do rather challenge the power of the imagination to conceive an obstruction of commerce. A camera manufactured in Japan might have been bought for personal use, and stolen from its owner ten years later. The theft would not obstruct commerce directly, and the indirect effect would be elusive. If the owner replaced the camera, the theft would have had the effect of stimulating commerce! But this would also often be true in commercial thefts,

or in thefts of personal property of large value. However, whether the cases we have cited are sound we need not decide today. Here the interstate (really international) transaction was interrupted by the robbery before the good came to rest in the hands of the ultimate consumer.

Of course it was a "consumer" of a peculiar sort: a confidential informant detailed to buy an illegal good not for personal consumption, his own or anyone else's, but to serve as evidence in a prosecution designed to stifle the very commerce in question. That makes no difference either. For valid law enforcement purposes the government wants to preserve and even facilitate a certain type and amount of illegal drug trafficking. That is a socially valuable commerce even if its only value is as evidence in legal proceedings. It is no less valuable than the transportation across state lines, for DNA testing, of hair samples obtained from suspects.

■ The other issue meriting discussion is the propriety of the district judge's having sentenced Thomas as an armed career criminal by virtue of Thomas's having previously been convicted of statutory rape under an Illinois statute that punishes a man who has sexual intercourse with a woman who is under the age of 17 and more than five years younger than he. 720 ILCS 5/12–16(d). (Illinois calls this form of statutory rape aggravated criminal sexual abuse.) Under the armed career criminal statute, this enhancement, which elongated Thomas's sentence by 15 years, was proper only if his conviction was for a "violent felony." 18 U.S.C. § 924(e)(1). The judge held that it was.

The statute defines a violent felony, so far as bears on this case, as one "that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Recently the full court dealt with the identical language under the federal sentencing guidelines governing the crime of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1); see U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(a)(1), and held that the conviction of a 17 year old boy for sexual intercourse with a 13 year old girl under a Wisconsin statute that punished such conduct as second-degree

sexual assault was a conviction for a crime of violence. *United States v. Shannon*, 110 F.3d 382 (7th Cir.1997) (en banc). We based this conclusion on medical literature which indicated that a 13 year old is unlikely to appreciate fully or be able to cope effectively with the disease risks and fertility risks of intercourse and that if she does become pregnant it is likely to be a high risk pregnancy—both for her and for the fetus. *Id.* at 387–88. We carefully avoided holding that all forms of statutory rape are necessarily crimes of violence within the meaning of the guideline or violent felonies within the meaning of the armed career criminal act.

Because *Shannon* holds that the charging document is (with exceptions immaterial to the present case) the only source of information on which we can properly rely in classifying a prior offense used to enhance the punishment for the offense of conviction, 110 F.3d at 384–85, and because the charging document in this case does not specify the ages of victim and defendant, the only facts we can go on is that the girl was older than 13 but not yet 17 and Thomas was at least 5 years older. She may have been a day under 17 and he exactly 22. Here as in *Shannon* there are indications that the defendant was in fact guilty of forcible rape, which is indisputably a crime of violence, but the indications do not appear in the charging document, so we are barred from considering them.

The government has not furnished us, nor did the district court cite, any studies or reasons that would support a conclusion that sex between a 16 year old girl (perhaps, as we said, a day short of 17) and a 22 year old man poses a potential risk of physical injury to the girl (or to her fetus, which we can assume is also "another" within the meaning of the statute, should the girl become pregnant). More than 40 percent of the 16 year old girls in our society have had sexual intercourse, Alan Guttmacher Institute, *Sex and America's Teenagers* 18–20 (1994); 45 of the 50 states permit marriage at 16—including Illinois (if the parents consent, as almost all the states require), 750 ILCS 5/203; and in a majority of states 16 is the age of consent, rather than 17 as in Illinois. In light of these legal and sociological facts, it is difficult to maintain on a priori grounds that sex is physically dangerous to 16 year old girls. This may be wrong, but a 15-year sentence enhancement ought not to turn on sheer conjecture.

We have left out of consideration so far the age of the statutory rapist. In *Shannon* he was only 17. Here we are assuming that he was 22 (in fact he was 29 and his victim 16, but remember that we are not permitted to base decision on facts not found in the charging document). Most states recognize that a substantial age difference is an aggravating factor. The primary concern is that the older male will use deceptive or manipulative methods to overcome the immature female's reluctance to engage in sex. E.g., *People v. Reed*, 148 Ill.2d 1, 169 Ill.Dec. 282, 591 N.E.2d 455, 458–59 (1992); Joyce Abma, Anne Driscoll & Kristin Moore, "Young Women's Degree of Control over First Intercourse: An Exploratory Analysis," 30 *Family Planning Perspectives* 12 (1998). Since unconsented-to sex is forcible rape, or, at the least, battery—and both are crimes of violence—there is an argument (not however made by the government) that the seduction of a young girl by an older man is a kind of quasi-battery, the girl not having been fully capable in the circumstance of giving meaningful consent. In addition, intercourse with an older male involves an enhanced risk of sexually transmitted disease because an adult man is more likely to be infected than a teenager. E.g., Kim S. Miller, Leslie F. Clark & Janet S. Moore, "Sexual Initiation with Older Male Partners and Subsequent HIV Risk Behavior Among Female Adolescents," 29 *Family Planning Perspectives* 212 (1997). And there is evidence that a 16 year old girl is at greater risk of physical injury, in the event that she becomes pregnant, than if she were older, mainly because she is less likely to obtain good prenatal care. E.g., Alison M. Fraser, John E. Brockert & R.H. Ward, "Association of Young Maternal Age With Adverse Reproductive Outcomes," 332 *New Eng. J. Med.* 1113 (1995). This evidence is not inconsistent with Illinois' permitting marriage at 16, since the requirement of parental consent provides some protection for the immature 16 year old.

The difficulty with using this evidence as a basis for classifying Thomas's crime as a crime of violence is that it requires an essentially legislative judgment in a field in which the responsibility for making such judgments rests with Congress and the U.S. Sentencing Commission. See *United States v. Meader*, 118 F.3d 876, 885 (1st Cir.1997). The government has not bothered to cite any of the evidence, or to present any concrete arguments of the sort sketched above for the classification that it urges. We are reluctant to authorize a 15-year sentencing enhancement on the basis of a secondary literature that the government has not thought enough of even to cite. And *Shannon* cannot be urged as authority, because the risk of sex to 13 year old girls is much greater than the risk to 16 year olds. E.g., Saeid B. Amini et al., "Births to Teenagers: Trends and Obstetric Outcomes," 87 *Obstetrics & Gynecology* 668 (1996); Fraser, Brockert & Ward, *supra*, at 1115. If the government, which bears the burden of proof, e.g., *United States v. Brown*, 52 F.3d 415, 425 (2d Cir.1995), wants to convince us that Thomas's sexual crime was a crime of violence, it will have to do more than it did in this case—which was, in fact, to peek behind the charging document in an improper effort to persuade the district judge that Thomas had committed a forcible rape.

The judgments are affirmed except that Thomas's sentence as an armed career criminal is vacated and his case is remanded for resentencing.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.