Chue XIONG, Petitioner–Appellant,

v.

IMMIGRATION AND NATURAL-
IZATION SERVICE, Respon-
dent–Appellee.

No. 97–3402.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1998.

Decided April 12, 1999.

Derrick M. Ford, Soo J. Choi, Northwestern University Legal Clinic, Christopher J. Greeno (argued), John R. O'Neil, Kirkland & Ellis, Chicago, IL, for Petitioner–Appellant.

Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Mary J. Candaux, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, Nelda Reyna (argued), Department of Justice, Civil Division, Immi-

gration Litigation, Washington, DC, for Respondent–Appellee.

Before BAUER, DIANE P. WOOD, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

On May 4, 1995, Chue Xiong ("Xiong") was sentenced to five years of imprisonment for violating Wis. Stat. § 948.02(2), which makes it a Class BC felony for someone to have "sexual contact or sexual intercourse with a person who has not attained the age of 16 years." Wis. Stat. § 948.02(2). On August 5, 1996, an immigration judge ("IJ") held that Xiong had been convicted of a crime of violence, and that he was, therefore, deportable. On August 21, 1997, the Board of Immigration Appeals ("BIA") agreed. We vacate the deportation order and remand for further proceedings.

## I. BACKGROUND

Xiong is a legal permanent resident of the United States. He has lived in the U.S. since June 12, 1987, when he and his family entered the country as refugees seeking protection from persecution by the Laotian government.

On January 24, 1995, Xiong was charged with second degree sexual assault of a child under a Wisconsin statute that states: "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class BC felony." Wis. Stat. § 948.02(2). "Sexual contact" is defined as:

(a) Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant [or]

(b) Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant. Wis. Stat. § 948.01(5).

"Sexual intercourse" is defined as:

vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required. Wis. Stat. § 948.01(6).

According to the criminal complaint, Xiong and his girlfriend of seven weeks, N.L.G., engaged in sexual intercourse on November 4, 1994. N.L.G. was fifteen years old at the time. The complaint also states that both Xiong and N.L.G. told the police that they undressed themselves and that Xiong wore a condom. Xiong informs us that he was eighteen years old at the time of the incident. On May 4, 1995, after Xiong pled no contest, the Outagamie County Wisconsin Circuit Court entered a judgment of conviction, and sentenced Xiong to five years of imprisonment.

On June 18, 1996, soon after Xiong was released on parole, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC"), charging that Xiong's violation of Wisconsin law constituted a crime of violence, and was thus an aggravated felony under Immigration and Nationality Act ("INA") § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F), for the purpose of determining deportability under INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii) (now INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii)). At his deportation hearing on August 5, 1996, Xiong admitted the allegations in the OSC but contested the proposition that he had been convicted

of a crime of violence. The IJ disagreed with Xiong, and ordered that he be deported to Laos. On August 21, 1997, the BIA dismissed Xiong's appeal and entered a final deportation order.

In this Court, Xiong once again argues that he is not deportable because his offense does not constitute an aggravated felony. In response, the INS argues that we lack jurisdiction to review Xiong's deportation order, that Xiong is deportable as charged, and that even if Xiong's violation of Wisconsin law does not constitute a crime of violence, it constitutes sexual abuse of a minor, which is also an aggravated felony, INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A).

## II. DISCUSSION

### A. Statutory Framework

■ Under the INA "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (previously INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii)). Furthermore, according to the transitional rules set out by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), when a final order of deportation is entered after October 30, 1996, "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed ... [an aggravated felony]." IIRIRA § 309(c)(4), Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), set out at 8 U.S.C. § 1101, Historical and Statutory Notes. This transitional rule is substantially the same as the rule set forth in the repealed INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10), and the new INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C). Notwithstanding the unreviewability of cases involving deportation of aggravated felons, however, this Court does have jurisdiction to determine whether it has jurisdiction; that is, we have jurisdiction to determine whether Xiong has been convicted of an aggravated felony. *Yang v. I.N.S.*, 109 F.3d 1185, 1192 (7th Cir.1997) ("When judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists."). Therefore, in this case, both jurisdiction and the merits turn on whether Xiong has committed an aggravated felony.

The list of aggravated felonies includes, *inter alia*, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment imposed ... is at least 5 years." INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). The term "crime of violence" means:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. § 16.

Since second degree sexual assault of a child under Wis. Stat. § 948.02(2) does not have "as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 16(a), only § 16(b) is relevant to this case.

The IIRIRA amended the definition of "aggravated felony" after Xiong's deportation hearing but before the BIA's decision. Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Most significantly for our purposes, the IIRIRA added sexual abuse of a minor to the list of aggravated felonies. IIRIRA § 321(a)(1), 8 U.S.C. § 1101(a)(43)(A).

### B. Crime of Violence

■ We begin by considering whether Xiong has been convicted of a crime of violence, as charged by the OSC. This endeavor requires us to determine whether Xiong's violation of Wis. Stat. § 948.02(2) "by its nature, involve[d] a sub-

stantial risk that physical force against the person or property of another [would] be used." 18 U.S.C. § 16(b). We review the BIA's determination *de novo* while deferring to its interpretation of the statute it administers. *Marquez v. I.N.S.*, 105 F.3d 374, 378 (7th Cir.1997).

Our starting point is *United States v. Shannon*, 110 F.3d 382 (7th Cir.1997) (*en banc*), in which we considered whether Shannon's violation of Wis. Stat. § 948.02(2) constituted a crime of violence under the Career Offender provision of the Sentencing Guidelines, which subjects defendants to enhanced penalties for repeatedly committing crimes of violence, *see* U.S.S.G. § 4B1.1. Finding that Wis. Stat. § 948.02(2) "covers a lot of ground, and [that] some of it may not be crime of violence ground," we concluded that a violation of the statute is not, per se, a crime of violence. *Shannon*, 110 F.3d at 387. Nonetheless, the IJ proceeded directly from the observation that Xiong's "offense [wa]s essentially that of a statutory rape" to the conclusion that Xiong had committed a crime of violence. *In the Matter of Xiong*, Oral Decision of IJ at 2–3 (Aug. 5, 1996). This reasoning is directly at odds with *Shannon*. When the statutory definition of a criminal offense encompasses conduct that does not constitute a crime of violence as well as conduct that does constitute a crime of violence, an immigration judge may not simply categorize all conduct covered by the offense as crime of violence conduct.[1] Our deference to the IJ cannot overcome this flaw in his reasoning.

Our conclusion that the IJ was unjustified in limiting his inquiry to the language of the statute raises another question: what else should the IJ have considered? Supreme Court case law

suggests that the IJ could consider only the statute's language and the charging papers. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990) (holding that "an offense constitutes 'burglary' for purposes of [an Armed Career Criminal Act ('ACCA'), 18 U.S.C.] § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant"). Furthermore, in *Shannon*, 110 F.3d at 384, and again in *United States v. Hicks*, 122 F.3d 12, 12 (7th Cir.1997), and *United States v. Thomas*, 159 F.3d 296, 299 (7th Cir.1998), we held that a sentencing judge may not look beyond the charging document to consider facts alleged in the criminal complaint. We explained that because defendants "plead guilty to the information ... [they] admit[ ] only the facts contained in it." *Shannon*, 110 F.3d at 384. As a result, an evidentiary hearing would be necessary to substantiate the facts alleged in the complaint. *Id.* We reasoned that a rule that limits the sentencing judge to the facts set out in the charging document is necessary in order to "avoid greatly complicating sentencing hearings with little offsetting gain." *Id. See also Taylor*, 495 U.S. at 601–2, 110 S.Ct. at 2159–60. Nonetheless, a well established exception allows judges to look beyond the indictment or information when "it [i]s otherwise impossible to determine the proper classification of the offense ... and ... the deviation d[oes] not require a hearing to resolve contested factual issues." *Shannon*, 110 F.3d at 384.[2] *See also Hicks*,

---

**1.** The BIA cites *Matter of Khalik*, 17 I. & N. Dec. 518, 519 (BIA 1980), for the proposition that the "Immigration Judge and the Board will not go behind the records of conviction to determine the guilt or innocence of an alien." *In re Xiong*, Order of the BIA (Aug. 21, 1997). We are not asking the IJ to do so. Xiong did not contend that he wasn't actually convicted.

Compare *Khalik*, 17 I. & N. Dec. at 519. He simply asked that the IJ determine whether what he was convicted of was a crime of violence.

**2.** The Career Offender provision at issue in *Shannon* defines "crime of violence," in part, as any offense that "involves conduct that

122 F.3d at 12. This case meets both criteria.

■ The information charging Xiong states only that he intentionally had sexual intercourse with N.L.G., and that N.L.G. was born on July 4, 1979 (making her fifteen years old at the time of the incident). In *Shannon*, we held that "sexual intercourse with a 13 year old is ... a crime of violence ... because it ... present[s] a serious risk of physical injury." 110 F.3d at 387. However, we expressly left "unresolved the proper treatment of cases in which the victim of the statutory rape is above the age of 13." *Id.* at 389. Later, in *Thomas*, we observed that "it is difficult to maintain on *a priori* grounds that sex is physically dangerous to 16 year old girls." 159 F.3d at 299.[3] Our uncertainty remained even after we took account of the fact that the Illinois statute at issue in *Thomas* required that there be a five year age difference between the defendant and victim. *Id.* at 299–300. The present case is even more ambiguous than *Thomas*. Wis. Stat. § 948.02(2) does not address the age of the defendant, and the indictment did not specify Xiong's age. Thus, there is no apparent substantial age difference for us to point to as an aggravating factor. *See Thomas*, 159 F.3d at 299 ("Most states recognize that a substantial age difference is an aggravating factor."). The facts also distinguish this case from *In re B–*, cited by the IJ, in which the BIA considered a Maryland statute that prohibits a person from engaging in sexual inter-course with someone who is under *fourteen* years old and who is *at least four years younger* than the defendant. 1996 WL 170049 at *2 (BIA 1996). Simply put, the bare facts outlined in Xiong's indictment do not enable us to determine whether his conduct, by its nature, involved a substantial risk of physical force.

This brings us to the second criterion that must be met before a judge can look beyond the charging papers; namely, that no hearing be required to resolve contested factual issues. On this point, Xiong's case differs from both *Shannon* and *Thomas*. In those cases, the criminal complaint alleged facts suggesting that the defendants had committed forcible rape. *Shannon*, 110 F.3d at 384; *Thomas*, 159 F.3d at 299. Thus, a hearing would have been required to resolve contested factual issues regarding the use of force. Similarly, in *United States v. Lee*, in which we announced the general rule that a sentencing judge may not look at the facts set forth in a criminal complaint, 22 F.3d 736, 741 (7th Cir.1994), the complaint showed that the defendant had used force when he robbed his victim, *id.* at 738. Again, a hearing would have been required to substantiate the facts in the complaint. In Xiong's case, however, the facts are not contested. The IJ would not be peeking at the complaint for the illegitimate purpose of determining what Xiong could or should have been convicted of, but rather for the legitimate purpose of determining what he had been convicted of. *Cf. Hicks*,

presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). In *Matter of Alcantar*, the BIA held that cases interpreting this definition of "crime of violence" are inapposite. 20 I. & N. Dec. 801, 811 (BIA 1994). The BIA contrasted the Guidelines definition with the language of 18 U.S.C. § 16(b), which requires that conduct "by its nature" involve a substantial risk of physical force. The BIA reasoned that the absence of the phrase "by its nature" in the Sentencing Guidelines is crucial because it is this phrase in 18 U.S.C. § 16(b) that requires immigration judges to focus on the nature of the generic offense rather than on the actual conduct of the offender. *Alcantar*, 20 I. & N.

Dec. at 810–11. We do not believe that the difference is critical. Regardless of the definition being used, judges must be guided by the need to avoid complicating sentencing or immigration hearings. *See Shannon*, 110 F.3d at 384; *In re Pichardo–Sufren*, 1996 WL 230227 at *12–13 (BIA). Small differences in language do not change this imperative.

**3.** The Armed Career Criminal Act's definition of "violent felony," at issue in *Thomas*, is almost identical to the Sentencing Guidelines' definition of "crime of violence." *Compare* 18 U.S.C. § 924(e)(2)(B)(ii) *with* U.S.S.G. § 4B1.2(a)(2).

122 F.3d at 12–13 ("The only purpose of ... peek[ing behind the information] in this case could be to determine not what Hicks had been convicted of ... but what he could or should have been convicted of, an illegitimate inquiry under the crime of violence guideline."); *In re Pichardo–Sufren*, 1996 WL 230227 at *12 (BIA 1996) (explaining that it is "the crime that [Pichardo–Sufren] actually was convicted of rather than a crime that he may have committed which is the determinative issue to be resolved").

■ If the IJ had considered the facts described in the complaint, he would have found that the conduct of which Xiong was convicted consisted of consensual sex between a boyfriend and his fifteen year old girlfriend. Absent a substantial age difference, this conduct did not, "by its nature, involve[ ] a substantial *risk* [of] physical force." 18 U.S.C. § 16(b). In coming to this conclusion, we emphasize that the relevant inquiry is whether the conduct involved a substantial *risk* of physical force, not whether physical force was actually used. *Alcantar*, 20 I. & N. Dec. at 809.

## C. Sexual Abuse of a Minor

The INS argues that Xiong's conduct constitutes sexual abuse of a minor, another aggravated felony. IIRIRA § 321(a)(1), 8 U.S.C. § 1101(a)(43)(A). Thus, it contends that Xiong is deportable, even if he has not been convicted of a crime of violence. Xiong raises three objections to this contention. First, he argues that the IIRIRA's newly expanded definition of "aggravated felony" does not apply to him. Second, he argues that even if the definition does apply to him, the INS cannot raise it for the first time in these proceedings. Finally, Xiong argues that his conduct did not constitute sexual abuse of a minor.

■ "Sexual abuse of a minor" was added to the list of aggravated felonies as part of the IIRIRA, which was enacted on September 30, 1996—between the IJ's decision and the BIA's dismissal of Xiong's appeal. Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Thus, we must begin by determining whether the new definition of "aggravated felony" applies to Xiong. We join the Ninth Circuit in observing that the "IIRIRA is a difficult statute to construe ... [because] different sections and subtitles have distinct, and different, provisions for effective dates." *Valderrama–Fonseca v. I.N.S.*, 116 F.3d 853, 855 (9th Cir.1997). Indeed, the applicability of the new definition of "aggravated felony" comes down to a battle of the effective dates.

■ In Xiong's favor, the IIRIRA's transitional rules state that for aliens in deportation proceedings as of April 1, 1997, "the amendments made by this subtitle shall not apply." IIRIRA § 309(c)(1)(a), set out at 8 U.S.C. § 1101, Historical and Statutory Notes. However, as the INS points out, IIRIRA § 321, which amends the definition of "aggravated felony," states that "[t]he amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred." IIRIRA § 321(c), set out at 8 U.S.C. § 1101, Historical and Statutory Notes. "Actions taken" are actions and decisions of the Attorney General acting through an immigration judge or the BIA. *Choeum v. I.N.S.*, 129 F.3d 29, 37 (1st Cir.1997); *Valderrama–Fonseca*, 116 F.3d at 857. *But see Mendez–Morales v. I.N.S.*, 119 F.3d 738 (8th Cir.1997) (per curiam) (holding that even judicial review of a deportation order is an action taken). As the INS correctly observes, the more specific IIRIRA § 321(c) effective date must control. See *Gozlon–Peretz v. United States*, 498 U.S. 395, 407, 111 S.Ct. 840, 848, 112 L.Ed.2d 919 (1991). Accordingly, we hold that the BIA's dismissal of Xiong's appeal on August 21, 1999 was an action taken that triggered the new definition of "aggravated felony."

■ Nonetheless, the INS may not now argue that Xiong committed sexual abuse of a minor. It is firmly established that aliens have Fifth Amendment due process rights in deportation proceedings. *Nazarova v. I.N.S.*, 171 F.3d 478, 482–83 (7th Cir.1999) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903)); *Choeum*, 129 F.3d at 38. Notice and a meaningful chance to be heard are essential to these due process rights. *Nazarova*, 171 F.3d at 482–83; *Choeum*, 129 F.3d at 38. In *Choeum*, the First Circuit held that the INS could not "substitute alternative grounds for deportation at [the judicial review] stage in the proceedings," 129 F.3d at 33, because "briefing and argument before [a court of appeals]" do not provide sufficient notice to the alien, *id.* at 39. We recognize that *Choeum* is distinguishable from our case because in *Choeum*, the INS used one crime as the basis for deportation and a different crime as the basis for precluding jurisdiction. *Id.* at 40 n. 8. However, lack of notice is just as problematic when a single crime underlies both the ground for deportation and the ground later asserted for the purpose of precluding judicial review. It is often the case that an alien cannot challenge the fact of conviction, but can challenge the characterization of the conviction.

The OSC charged Xiong with deportability under "Section 241(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after entry, [he was] convicted of an aggravated felony as defined in Section 101(a)(43) of the Act, to wit: a crime of violence (as defined in Section 16 of Title 18, United States Code ... ), for which a term of imprisonment imposed was five years or more." (OSC.) The IJ found that Xiong's "conviction of sexual intercourse with a person under 16 in violation of 948.02(2) of Wisconsin law does constitute a crime of violence under 18 U.S.C. 16(b)," and held that "this constitutes an aggravated felony and ... the respondent is deportable as charged." *In the Matter of Xiong*, Oral Decision of IJ at

3. The IJ was not asked to decide whether Xiong had been convicted of sexual abuse of a minor, and Xiong was not given a chance to argue against the proposition. The question is best considered by the IJ on remand. *Mendez–Morales*, 119 F.3d 738, and *Abdel–Razek v. I.N.S.*, 114 F.3d 831, 832 (9th Cir.1997), which do not discuss the due process implications of substituting deportation grounds late in the process, do not persuade us to the contrary. *See Mendez–Morales*, 119 F.3d at 738–39 (holding, per curiam, that the court had no jurisdiction to review a deportation order when the alien had been convicted of first degree sexual assault of a thirteen year old and ordered deported as an alien convicted of a crime of moral turpitude because the conviction constituted sexual abuse of a minor, even though sexual abuse of a minor had not been added to the list of aggravated felonies until after the BIA's denial of the alien's appeal); *Abdel–Razek*, 114 F.3d at 832 (holding that "[t]he fact that the BIA did not issue its order with reference to [section 1251(a)(2)(A)(iii), now section 1227(a)(2)(A)(iii), dealing with aggravated felonies] does not alter petitioner's status as a convicted felon for purposes of the availability of judicial review").

## CONCLUSION

For the foregoing reasons, we DENY the INS's motion to dismiss for lack of jurisdiction, VACATE Xiong's deportation order, and REMAND for proceedings consistent with this opinion.