In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 24-1788, 24-2168 & 24-2388

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEPHON DEMUS, RYAN CLARK,
and MARLON BARKSDALE

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-CR-00530 — **John F. Kness**, *Judge.*

_____

ARGUED SEPTEMBER 3, 2025 — DECIDED FEBRUARY 20, 2026

_____

Before SCUDDER, KIRSCH, and PRYOR, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Stephon Demus, Ryan Clark, and
Marlon Barksdale were convicted of Hobbs Act robbery and
using, carrying, and brandishing a firearm during a crime of
violence. 18 U.S.C. §§ 1951(a), 924(c)(1)(A). The facts are sim-
ple. They robbed at gunpoint several customers at a conven-
ience store—one person just outside and several others inside
the store—causing it to temporarily close. They first argue on

appeal that the robbery did not obstruct, delay, or affect interstate commerce. However, the robbery both prevented commerce from occurring and disrupted commerce in action, so this challenge to their convictions fails. In the alternative, they argue that the jury may have convicted based only on the robbery of the customer outside the store which, they contend, did not affect interstate commerce. But this argument was never presented to the jury. We therefore affirm.

I

Stephon Demus, Ryan Clark, and Marlon Barksdale robbed several customers in and outside of J&J Food and Grocery (J&J), a 24-hour convenience store in Chicago. Around 7 pm each evening, J&J closes its sales floor, allowing customers only to enter a small vestibule where they can place, receive, and pay for orders. The crime occurred late at night and progressed rapidly. The defendants first robbed at gunpoint an individual who was standing on the sidewalk just outside the vestibule. They then proceeded into the vestibule, where they robbed additional customers in line at gunpoint. The defendants neither made demands of J&J employees nor attempted to steal from the store itself. After the robbery, the store shut down to allow the police to investigate the crimes. One employee estimated the store was shut down for half an hour; another figured it was an hour.

The defendants were eventually indicted for, and ultimately convicted of, one count of Hobbs Act robbery and one count of brandishing a firearm in relation to such a robbery. 18 U.S.C. §§ 1951(a), 924(c)(1)(A). The defendants then filed a motion for judgment of acquittal that the district court denied. Now, they appeal, seeking reversal on alternative grounds. First, they contend that the robbery did not obstruct, delay, or

affect commerce because it was of customers who, in their view, were not engaged in commerce for the purposes of the Hobbs Act. Second, they argue that even if robbing the individuals inside the store implicated the Hobbs Act, robbing the individual outside the store did not. They claim that the general verdict leaves open the possibility that the jury inappropriately relied on the robbery outside the store as the sole basis for conviction.

## II

### A

We review a denial of a judgment of acquittal de novo, reviewing "the evidence presented at trial in the light most favorable to the government and draw[ing] all reasonable inferences in its favor." *United States v. Sorensen*, 134 F.4th 493, 498 (7th Cir. 2025). "The language of the Hobbs Act is unmistakably broad." *Taylor v. United States*, 579 U.S. 301, 305 (2016). Making it a federal crime to "in any way or degree obstruct[], delay[], or affect[] commerce ... by robbery," 18 U.S.C. § 1951(a), the Act confers jurisdiction in a manner coextensive with the Commerce Clause. *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000). As such, the government need only show the robbery had a "de minimis or otherwise slight effect on interstate commerce." *Id.* And such an effect need not be actual: we have found even "a realistic probability of an effect" can suffice. *United States v. Anderson*, 809 F.2d 1281, 1286 (7th Cir. 1987). The government has cleared this low bar.

The parties agree that J&J engages in interstate commerce. Since the robbery forced J&J to temporarily shut down, there plainly exists more than the "realistic probability" that it obstructed, delayed, or affected interstate commerce. See *id.* For

the time J&J was closed, the store was prevented from engaging in commerce, reducing the store's profits. *United States v. Hunter*, 932 F.3d 610, 623 (7th Cir. 2019).

Further, when "defendants obstruct[] commerce in a … literal sense" by robbing someone directly engaged in interstate commerce, they commit a Hobbs Act robbery. *United States v. Thomas*, 159 F.3d 296, 297 (7th Cir. 1998). At the center of the inquiry is the "nexus between [the robbery] and interstate commerce." *United States v. Mattson*, 671 F.2d 1020, 1025 (7th Cir. 1982) (finding that to constitute a Hobbs Act crime, the offense itself must affect interstate commerce). For example, in *Thomas*, we found the defendant violated the Hobbs Act when he robbed an informant who had "arranged to purchase" drugs and had arrived at the place appointed for the transaction. 159 F.3d at 297. There, the Hobbs Act applied because the robbery disrupted a specific "transaction in [interstate] commerce." See *United States v. Marrero*, 299 F.3d 653, 654 (7th Cir. 2002).

Here, the customers were standing feet away from the store clerk, waiting in line to purchase items from the store. This conduct established a sufficient nexus with commerce for the purposes of the Hobbs Act.

B

The defendants contend that their Hobbs Act conviction fails for another reason. They argue that the robbery of the man outside the store did not affect interstate commerce, and since it is at least theoretically possible that the jury could have convicted only based on that robbery, the government failed to prove that the robbery affected interstate commerce. For this argument, they cite *Yates v. United States*, 354 U.S. 298

(1957), where the Supreme Court held that a verdict must be set aside when it "is supportable on one [legal] ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 312; *Griffin v. United States*, 502 U.S. 46, 58-59 (1991) (the rule announced in *Yates* applies only to mistakes about the law, not mistakes about the weight or factual import of evidence). But the defendants' reliance on *Yates* is flawed.

A successful *Yates* argument requires that the jury was presented with two theories, one of which is legally inadequate. See *id.* at 59. This did not occur here. The defendants were each charged with a single count of Hobbs Act robbery. If the events, taken together, constituted a single robbery, then the defendants' argument raises only a sufficiency of the evidence issue and therefore cannot support a *Yates* claim. See *id.* at 59. So, to be a valid *Yates* argument, the defendants' contention must reduce to a claim that the events inside and outside the store were separate robberies with different effects on interstate commerce. In other words, the jury must have had the option of convicting either on the theory that the events taken together constituted a single robbery, or on the theory that they constituted multiple robberies, at least one of which was of the man outside the store. Then, the claim would be that the second theory was legally invalid as applied here, because the robbery of the man outside the store did not affect interstate commerce.

But the jury was not presented with such a second legal theory. Even now, the defendants don't point to evidence substantiating the contention that two separate theories of conviction were presented to the jury. Accordingly, the defendants' *Yates* argument fails.

With regard to the firearms convictions, the defendants assert only that they must be vacated if the Hobbs Act robbery convictions are reversed. As we affirm the robbery convictions, so too do we affirm the firearms convictions.

AFFIRMED