**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Carl BUGGS, Drew Carter III, Nathaniel Rimpson III, and Charles Scott,**
**Defendants–Appellants.**

No. 00–1060.

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 2001.

Decided May 2, 2001.

Before Hon. EASTERBROOK, Hon. RIPPLE, Hon. WILLIAMS, Circuit Judges.

Order

The four defendants have been convicted of violating the Hobbs Act, 18 U.S.C. § 1951, and of associated offenses including conspiracy and the unlawful use of firearms. The sentences range from a low of 117 months for Drew Carter to a high of 675 months for Nathaniel Rimpson.

1. The Hobbs Act penalizes the obstruction of interstate commerce by robbery or extortion. Defendants stole at gunpoint from multiple retail businesses. They contend that the evidence did not establish obstruction of interstate commerce. Now that the jury has returned guilty verdicts, however, we must take the evidence and all reasonable inferences in the light most favorable to the prosecution; and in this light the evidence suffices to establish that the victims were engaged in interstate commerce, which the robberies obstructed. The Hobbs Act penalizes one who "*in any way or degree* obstructs, delays, or affects commerce or the movement of any article or commodity in commerce". 18 U.S.C. § 1951(a) (emphasis added). This language signifies the full extension of the national commerce power. See *United States v. Staszcuk,* 517 F.2d 53 (7th Cir.1975) (en banc); *United States v. Thomas,* 159 F.3d 296 (7th Cir.1998); *United States v. Bailey,* 227 F.3d 792, 797 (7th Cir.2000). As the victims here were commercial establishments, the sort of problems that arose in *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) (dealing with arson of a residence), have been avoided.

Although defendants observe that only a substantial effect on commerce satisfies the Hobbs Act, decisions such as *Staszcuk* interpret this to mean that the effect of the entire *class* of transactions exemplified by the events in question is what must be substantial. In other words,

it is important to know whether retail outlets in the aggregate substantially affect interstate commerce. To this the answer indisputably is yes. See *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). The question for trial in a particular case then is whether the robbed (or extorted) establishments had a demonstrable, even if small, connection to that flow of interstate commerce. Evidence allowed the jury to conclude that all of the victims purchased inventory from other states, and that this business was impeded by thefts of either the goods or the proceeds of sales (which would reduce future purchases, a theme usually called "depletion of assets", although it might be better to say that when robbery cuts the profitability of an interstate business, it is inclined to reduce the scope of its operations and may go out of business altogether).

The evidence is weakest with respect to Loco's Barber Shop. The prosecutor asked the proprietor of this establishment whether he purchased supplies from Chicago; the proprietor gave an affirmative answer. The kind and quantity of these supplies was left up in the air. Still, the record shows (in addition to the proprietor's answer) that Loco's Barber Shop employed at least four barbers. An establishment of that size near the Illinois–Indiana border is bound to acquire many of its supplies from outside Indiana. A jury rationally could conclude that the robbery "*in [some] way or degree* obstruct[ed]" interstate commerce. See *United States v. DeMet*, 486 F.2d 816 (7th Cir.1973) (extortion of $10 and $20 sums from a cocktail lounge meets commerce element of Hobbs Act).

■ Defendants' effort to raise evidentiary issues indirectly, by contesting the sufficiency of the record before the grand jury, likewise is unavailing. Now that the petit jury has found guilt beyond a reasonable doubt, there is no point in asking what the grand jury properly could have found by a preponderance of the evidence. See *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *United States v. Fountain*, 840 F.2d 509, 514 (7th Cir.1988).

2. Defendants Rimpson and Scott contend that the indictment is defective because it does not allege that they acted "knowingly or wilfully." Because neither one raised this argument in the district court, our review is for plain error. Because the indictment tracks the statutory language, it is hard to see how any error could be "plain." See *United States v. Smith*, 223 F.3d 554, 571 (7th Cir.2000). (Our case thus differs from *United States v. Du Bo*, 186 F.3d 1177 (9th Cir.1999), for Du Bo raised his contention in the district court, and his appeal presented a harmless-error rather than a plain-error question.)

■ Rimpson and Scott do not elaborate. Just what elements of the crime must have been committed with what mental state? *Du Bo*, their principal authority, is no clearer; the ninth circuit thought that under circuit precedent *some* elements had to be committed with *some* mental state, but it did not say which elements, or with what state of mind. Some elements of the Hobbs Act do not depend on the defendant's mental state. Take the effect on interstate commerce. A person need not intend or even know those aspects of an offense that bring it under federal law, when the same basic acts also are forbidden by state law. See *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). Armed robbery is unlawful in Indiana, so bringing the prosecution under the Hobbs Act did not require any extra allegations of defen-

dants' knowledge and intent. By contrast, the robbery element of the offense does imply some mental elements: the defendants must know that they are not entitled to what they take, and they must intend to keep it. Need a Hobbs Act indictment restate these ingredients of any robbery offense? Our circuit has yet to address this question, and because our review is for plain error there is no need to do so now. The indictment informed Rimpson and Scott of the nature of the charge; they do not contend that they were unable to prepare their defense, or that the district judge failed to instruct the jury properly on the mental ingredients of the offense. There was thus no plain error, as that phrase has been understood by the Supreme Court. See, e.g., *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

3. Two of the defendants contend that they did not receive a speedy trial. The foundation for this argument is a contention that the district court should not have granted a continuance to permit Ben Richardson, an FBI agent working as the case agent, to attend a training session that conflicted with the date set for the beginning of trial. The date originally set for trial meshed with Richardson's schedule, but the district judge granted a continuance on a defense motion, and the new date created the problem. The further continuance to accommodate Richardson's schedule, defendants insist, violated the Speedy Trial Act. (Defendants also contend that the continuance violates the Speedy Trial Clause of the Sixth Amendment, but that position is frivolous. See *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Defendants were brought to trial within nine months of the indictment.)

The premise of this argument is that the prosecution did not need to consult with Richardson. The district judge thought otherwise, and the unsupported aspersions cast by Carter's lawyer on the honesty of the Assistant U.S. Attorney who applied for the continuance do not provide any basis for upsetting the district court's decision. What is more, the United States observes that, even if all of the time involved in this continuance were counted against the prosecution, defendants still were brought to trial within 70 countable days on the Speedy Trial Act clock. Defense counsel have not demonstrated any error in that calculation.

█ 4. As defendants see matters, the United States violated the Jencks Act, 18 U.S.C. § 3500, by failing to provide the transcript of certain testimony Agent Richardson provided to the grand jury. That one volume of grand jury testimony was not turned over until after trial is undisputed. But the Jencks Act did not require earlier disclosure, for a simple reason: the United States did not call Richardson as a witness. He was called by the defense. The core of the Jencks Act provides: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement...". 18 U.S.C. § 3500(b). Richardson was not a "witness called by the United States", so the Jencks Act did not require production of this grand jury material. Moreover, because the material was inculpatory, there was no constitutional obligation to produce it during trial. See *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The defendants' other arguments based on *Brady* are non-starters, because the supposedly exculpatory materials were turned over during the trial. *Brady* states a disclosure obligation, not a requirement

of pretrial discovery. See *United States v. Higgins,* 75 F.3d 332 (7th Cir.1996).

■ 5. Defendant Scott contends that the district court should have instructed the jury to receive with care the testimony of Edward Colier, formerly one of Scott's confederates in crime. Scott believes that Colier received a promise of reward for his testimony—or at least expected a reward, promised or not—so that the jury should have been warned not to accept his testimony lightly. Colier testified that he was assisting the prosecutor as an act of revenge against the defendants. The jury thus knew that Colier was not testifying in order to do his civic duty and had a motive that might lead him to be untruthful. What more could the defense have hoped for? An instruction could not have added much to Colier's admissions, or to the arguments that counsel were free to (and did) make concerning the nature and significance of the motives behind Colier's appearance on the stand. At all events, the giving of cautionary instructions is within the district judge's sound discretion, not here abused. See *United States v. Cook,* 102 F.3d 249 (7th Cir.1996). (Thus Scott's alternative ineffective-assistance argument, blaming his former lawyer for failing to seek a special accomplice instruction, goes nowhere. The idea that an ineffective-assistance claim can be founded on a single decision or omission in a case also is erroneous. It is the totality of counsel's work that matters.)

Although the defendants have advanced other arguments, none requires discussion. The trial was fair and the convictions are well supported.

AFFIRMED.