In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 07-2163 & 07-2393

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LAURA SALGADO and DANIEL PACHECO-GONZALES,

*Defendants-Appellants*.

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 43—**Samuel Der-Yeghiayan**, *Judge*.

---

ARGUED FEBRUARY 27, 2008—DECIDED MARCH 17, 2008

---

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  Remberto Juarez offered to buy ten kilograms of cocaine from David Elias, who introduced Daniel Pacheco-Gonzales to Juarez as his supplier. But when Pacheco-Gonzales could not come up with the cocaine, he and Elias decided to rob Juarez instead. They told Juarez that the cocaine was in hand; a meeting was arranged; Elias and Pacheco-Gonzales hired some aides (including Laura Salgado, who was to drive the getaway car). Elias, Pacheco-Gonzales, and Salgado,

plus some henchmen, arrived at the site of the transaction and tried to rob Juarez's lieutenant of the purchase money. They learned, to their horror, that both sides of this transaction were faking. Juarez was working for the Drug Enforcement Agency; his lieutenant was an informant; the site of the transaction was teeming with concealed agents. Soon Elias, Pacheco-Gonzales, and Salgado were in custody.

Elias pleaded guilty; Pacheco-Gonzales and Salgado were convicted after separate jury trials. Pacheco-Gonzales has been convicted of conspiracy to steal money from the United States, 18 U.S.C. §371, attempting to rob a person having custody of money belonging to the United States, 18 U.S.C. §2114(a), and possessing firearms in furtherance of an attempted robbery, 18 U.S.C. §924(c)(1)(A). His total sentence comes to 93 months. Salgado has been convicted of the conspiracy charge alone; her sentence is 60 months.

The informant (anonymous to protect his safety) was supposed to be carrying $170,000 to pay for the cocaine. Had that much, or indeed any, cash been in his control, there would be no problem with the conviction under §2114(a), which makes it a crime to assail "any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States". But the informant was empty handed—whether to protect the money from the informant, or the informant from Pacheco-Gonzales, the record does not disclose.

The prosecutor insists that lucre is beside the point. The argument runs: first, an informant is covered by §2114 because he is on the government's side and needs assurance of safety, and after all he might have been carrying money to buy cocaine; second, robbers need not know their victim's connection to the federal government, see *United States v. Feola*, 420 U.S. 671 (1975); third, in a prosecution for attempt, impossibility is no defense, see *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000), so the fact that there was no money to steal is irrelevant. The district court's instructions to the jury reflected this understanding. If the first step is right, everything else follows. But is the first step right?

The scope of §2114(a) depends not on who "needs protection" or anything similar, but on what is in the victim's pocket. Any person who has lawful custody of any mail matter or "any money or other property of the United States" is covered; status as a federal employee is unnecessary. *Garcia v. United States*, 469 U.S. 70 (1984). But this informant did not carry any mail matter, or any money or property of the United States. So the attempt to rob the informant did not violate §2114(a). It's really that simple. (This may account for our inability to find any opinion of either a district or appellate court addressing the prosecution's theory; apparently it has never been used before.)

If the prosecution were right, then *any* robbery or attempt to rob anyone, anyplace, anytime, would violate §2114(a), for the person might have been carrying "mail matter"—everyone does, from time to time. It would be implausible to treat §2114(a) as federalizing the law of robbery. If the DEA wants to make sure that the robbery or attempted robbery of an informant can be prose-

cuted in federal court, it should issue a shiny dollar coin to everyone involved in a drug transaction.

Most of the prosecutor's presentation is devoted to a parade of horribles rather than an analysis of the statutory text. Suppose, the brief asks, a gang of robbers descends on a post office only to find that the day's receipts had just been shipped out. How absurd to say that such an attempted robbery could be prosecuted only in state court! Doubtless there is a substantial federal interest in prosecuting attempted robberies of post offices, but it isn't necessary to stretch §2114(a) to that end. Another statute, 18 U.S.C. §2115, covers post offices whether or not they have cash on hand. Likewise the robbery or attempted robbery of any federal employee acting in the course of his duties is within the scope of 18 U.S.C. §111, whether or not the employee is carrying cash or any other federal asset.

Section 111, the law at issue in *Feola*, is worth a look, because it tells us something about how §2114(a) works. Section 111(a) provides for punishment of "Whoever— (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties". Section 1114 in turn identifies "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance". So Pacheco-Gonzales might have been prosecuted under §111 for intimidating the informant—though we could not

find any case discussing whether §1114 makes such a prosecution possible—but the maximum penalty would have been one year in prison. (Section 111(b) raises the maximum to 20 years if the assailant uses a deadly weapon or causes bodily injury, but no one fired a gun and the informant was uninjured.)

*Feola* holds that knowledge of the victim's status is not an element of the offense; it is enough if the victim actually is a federal employee on official duty or a "person assisting such an officer or employee in the performance of such duties". We asked at oral argument if it would be possible to prosecute under §111 for attempt when the victim was *not* a federal employee on duty (or assisting one), on the theory that impossibility is no defense. The prosecutor allowed that the victim must be an on-duty federal employee (or assisting one); otherwise §111 turns into an all-purpose assault statute covering every-one in the United States. Yet §111 has the same structure as §2114(a): the statute identifies a covered person by that person's relation to the national government, then makes it a crime to take certain acts concerning that protected person. Just as federal employment or assist-ance is essential to coverage under §111, so possession of mail or federal property is essential under §2114(a).

Because the prosecutor concedes that the informant was not carrying any money or other property belonging to the United States, Pacheco-Gonzales is entitled to be acquitted of the charge under §2114(a). He does not con-test his firearms conviction under §924(c)(1)(A). That leaves the conspiracy count, on which both Salgado and Pacheco-Gonzales were convicted. It charges that Elias, Pacheco-Gonzales, and Salgado conspired "to rob a person having lawful charge of money of the United States, by

means of force and violence and by intimidation, in violation of Title 18, United States Code, Section 2114(a)." Lest this seem to fall with the §2114 conviction, the prosecutor observes that the conspiracy is the agreement itself and precedes any overt act, so that it does not matter whether the conspirators succeed in fulfilling their objective. Just as it does not matter that a bank that conspirators planned to rob turned out to lack deposit insurance, see *United States v. Shively*, 715 F.2d 260, 266–67 (7th Cir. 1983), so it is irrelevant that the informant turned out to be empty handed, the argument concludes.

By emphasizing that the crime of conspiracy is the agreement rather than the completed offense, see *United States v. Shabani*, 513 U.S. 10 (1994); *United States v. Lechuga*, 994 F.2d 346 (7th Cir. 1993) (en banc), the prosecutor avoids one problem (that the informant's pockets were empty) at the cost of another. For there is no evidence that the conspirators agreed "to rob a person having lawful charge of money of the United States". That's the last thing they wanted to do. Had they known that Juarez was leading them into a trap, they would not have planned a robbery. What Elias, Pacheco-Gonzales, and Salgado agreed to do was to rob someone who they believed to be a private actor.

At this point the prosecution again invokes *Feola* and argues that plotters need not foresee the federal link to the person they set out to rob. That takes *Feola* too far. The Supreme Court stressed in *Feola* that the elements of the §111 offense do not include the assailant's knowledge of the victim's employment status. But the elements of a conspiracy offense *do* include knowing what makes the planned activity criminal. If three people agree to rob a building thinking it to be a drug store, the fact that the

store turns out to contain a postal counter does not make them guilty of conspiring to rob a post office. If the conspirators appear and rob the postal substation, they have committed the substantive offense under §2115 but not (retroactively) a conspiracy to rob the postal station. The crime of conspiracy is committed, or not, before the substantive crime begins.

So too if three people plan to steal the money to be used in a drug deal: if the buyer turns out to have money of the United States, the robbers violate §2114(a) but not §371, the conspiracy statute, for they did not *agree* ex ante to commit a crime against the United States, though in the event they managed to commit one. Pacheco-Gonzales and Salgado neither agreed to steal money from the United States (for they did not know that the person posing as the buyer was an informant) nor succeeded in doing so (for the informant was not carrying any of the DEA's cash). Both the conspiracy and the attempted robbery could have been prosecuted under state law; the attempted robbery also might have been prosecuted under §111. The only federal crime Pacheco-Gonzales succeeded in committing involved improper possession of firearms.

The difficulty that the prosecutor has encountered in this case and a handful of others, such as *United States v. Radomski*, 473 F.3d 728 (7th Cir. 2007), comes from the fact that there is no federal statute directly addressing theft of money in the course of a drug transaction. One statute, 18 U.S.C. §2118, deals with the theft of drugs, but only when the victim had lawful possession of them. Sometimes piggyback jurisdiction will supply a means to prosecute in federal court; repeated thefts of drugs or drug money, in violation of state law, could establish a

pattern of racketeering that supports a federal conviction under RICO. See, e.g., *United States v. Moore*, 363 F.3d 631 (7th Cir. 2004). An unfulfilled promise to deliver drugs, if made by phone, might support a charge of wire fraud (we need not decide whether it would). But Elias and Pacheco-Gonzales were not professional thieves; they just thought they saw an opportunity for one big score, and the indictment does not allege that they used phones or mails to deceive Juarez. Congress may, or may not, think that there ought to be a federal law covering what Elias and Pacheco-Gonzales set out to do. Existing federal criminal laws don't cover the subject, and it is an important norm of the criminal process that federal courts do not bend the statutes on the books to criminalize acts just because of a belief that they ought to be forbidden.

Salgado's conviction is reversed. Pacheco-Gonzales's convictions under §371 and §2114 are reversed; his sentence under §924 is vacated, and the case is remanded for imposition of a sentence appropriate now that the §924 offense is the sole conviction.