**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KHUSAR MOBLEY,
*Defendant-Appellant*.

No. 13-10561

D.C. No.
4:12-cr-00235-YGR-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted
March 11, 2015—San Francisco, California

Filed October 15, 2015

Before: Consuelo M. Callahan, Milan D. Smith, Jr.,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Criminal Law

The panel affirmed convictions for assault on a federal officer, 18 U.S.C. § 111(b); robbery of mail, money, or other property belonging to the United States, 18 U.S.C. § 2114(a); conspiring to commit those offenses, 18 U.S.C. § 371; and brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A), in a case in which the defendant and two cousins attempted to rob an ATF special agent who was posing as a buyer of illegal firearms.

The panel rejected the defendant's contention that no reasonable jury could have rejected his claim of self-defense with respect to the assault charge.

The panel rejected the defendant's contention that the government did not introduce sufficient proof that the agent actually had the money in his "charge, control, or custody" at the time the defendant assaulted him.

The panel rejected the defendant's contention that the evidence does not support his conviction under § 371, which makes it unlawful "to commit any offense against the United States." The defendant argued that the evidence established, at most, only that he conspired to assault a person who was not a federal officer and did not have custody of any money or other property belonging to the United States. The panel held that a rational jury could have inferred that the defendant

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and his cousins conspired to assault and rob not just the ATF agent, but anyone who accompanied him to the transactions as well. The panel also held that to be guilty of conspiring to assault a federal officer, the defendant did not need to know the ATF agent's official status, and did not need to know that the money the agent had in his custody belonged to the United States.

## COUNSEL

Mary E. Pougiales (argued), Pougiales Law Offices, Novato, California, for Defendant-Appellant.

Owen P. Martikan (argued), Assistant United States Attorney; Melinda Haag, United States Attorney; Barbara J. Valliere, Chief, Appellate Division, United States Attorney's Office, San Francisco, California, for Plaintiff-Appellee.

## OPINION

WATFORD, Circuit Judge:

The government charged three cousins—appellant Khusar Mobley, Otis Mobley, and D'Marce Hutcherson—with various crimes arising out of their attempt to rob a federal officer. The officer in question, Special Agent Tehran Palmer of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), was posing as a buyer of illegal firearms. When Agent Palmer showed up to purchase the grenade launcher the defendants had agreed to sell, the defendants attempted to rob him of the buy money at gunpoint. Otis (to avoid confusion, we will refer to him by his first name) and

Hutcherson pleaded guilty during trial, leaving Mobley to face the jury alone. The jury convicted Mobley of assault on a federal officer, 18 U.S.C. § 111(b); robbery of mail, money, or other property belonging to the United States, § 2114(a); conspiring to commit the above offenses, § 371; and brandishing a firearm in furtherance of a crime of violence, § 924(c)(1)(A).

Mobley challenges the sufficiency of the evidence introduced to support the convictions, as well as the legality of the 147-month sentence imposed by the district court. We address Mobley's sufficiency challenges here. We reject his sentencing arguments in an unpublished memorandum disposition filed together with this opinion.

I

Mobley's older cousin, Otis, arranged to sell a grenade launcher for $1,000 to an acquaintance named Aaron McGrew. Otis and McGrew agreed to meet mid-afternoon in the parking lot of a Chevy's restaurant. Otis drove to the meeting site accompanied by Mobley and Hutcherson. None of them knew that McGrew was working as an informant, so they did not suspect that one of the men accompanying McGrew—Agent Palmer—was actually an undercover agent. Agent Palmer planned to buy the grenade launcher using $1,000 in ATF funds, which he brought with him to the deal.

When Otis, Mobley, and Hutcherson pulled into the parking lot, McGrew and Agent Palmer were already there, parked in a four-door car being driven by Agent Palmer. Another informant who joined them, Dwight Bullard, was standing outside the car. McGrew got out of the car and greeted Otis. McGrew then got back into the front passenger

seat of Agent Palmer's car, while Mobley and Hutcherson got into the back seat, with Mobley sitting behind McGrew and Hutcherson sitting behind Agent Palmer. Otis and Bullard stood outside the car nearby.

What happened next was sharply disputed at trial. We first recount the facts viewed in the light most favorable to the government, since that is the lens through which we must review Mobley's sufficiency challenges. *United States v. Ruiz-Lopez*, 749 F.3d 1138, 1141 (9th Cir. 2014).

After the parties exchanged introductions, Mobley removed an object concealed under a coat he was carrying, which McGrew and Agent Palmer expected to be the promised grenade launcher. Instead, it was a loaded TEC-9 handgun. Mobley suddenly lunged forward over the center console, chambered a round, and pointed the gun at Agent Palmer's head and chest, which caused Agent Palmer to grab the gun and attempt to direct the barrel away from him. Hutcherson then drew his own gun and aimed it at Palmer's head. McGrew, sensing that a bad situation was about to get worse, jumped out of the car and took off running. Agent Palmer and Mobley engaged in a brief struggle for control of Mobley's gun, which Agent Palmer lost. While holding Agent Palmer at gunpoint, Mobley or Hutcherson shouted, "Where's the money at?" Mobley demanded, twice, that Agent Palmer empty out his pockets. At that point, Bullard reached through the open front passenger door and grabbed Mobley's gun, pulling the barrel away from Agent Palmer. As Bullard and Mobley fought for control of the weapon, Mobley tried to fire it several times, but Bullard managed to thwart those attempts by placing his thumb behind the trigger. Bullard eventually succeeded in disarming Mobley, and Agent Palmer's cover team of plainclothes officers rushed in

at about the same time. They arrested Mobley on the spot and shot the still-armed Hutcherson as he attempted to flee. Officers arrested Otis a short time later in a nearby field.

According to Mobley's version of events, this was all just a big misunderstanding. Mobley testified at trial that he had negotiated his own side deal—separate from the grenade launcher sale negotiated by Otis—to sell McGrew the TEC-9 handgun for $700. Mobley claimed that he was merely trying to show the gun to McGrew when Agent Palmer aggressively tried to take it from him. Mobley asserted that he reasonably (if mistakenly) believed he was under attack, and that all of his subsequent actions were taken in self-defense.

## II

Mobley challenges the sufficiency of the evidence on three fronts.

First, he contends that no reasonable jury could have rejected his claim of self-defense with respect to the assault charge under 18 U.S.C. § 111(b). Although the government bore the burden of proving that Mobley did *not* act in self-defense, it easily met that burden here. Obviously, if the jury had believed Mobley's version of events, it would have acquitted him. The jury chose instead to believe the testimony of Agent Palmer and McGrew, whose testimony completely negated Mobley's claim of self-defense. In deciding whom to believe, the jury did not have to take anyone's word for what happened, because Agent Palmer's car had been equipped with hidden audio and video recorders that captured everything on tape. The jury could judge for itself whose version of events was more credible. The tape does not support Mobley's version of events so decisively

that a rational jury would have been compelled to believe him. In fact, if anything, the tape strongly confirms Agent Palmer's and McGrew's accounts of what happened.

Second, Mobley attacks the sufficiency of the evidence supporting the robbery conviction under 18 U.S.C. § 2114(a). That statute provides, in relevant part: "A person who assaults any person *having lawful charge, control, or custody* of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, [shall be guilty of a crime]." (Emphasis added.) Mobley contends that the government did not introduce sufficient proof that Agent Palmer actually had the buy money in his "charge, control, or custody" at the time Mobley assaulted him.

Mobley is wrong. Agent Palmer testified that he brought $2,000 in ATF funds with him to the deal, which he intended to use to buy the grenade launcher and any other weapons the defendants might have offered. Contrary to Mobley's argument, the fact that Agent Palmer never "showed" the buy money during the transaction is of no consequence. It was enough for the government to prove that Agent Palmer had the ATF funds on his person, even if he never let Mobley see the money. Agent Palmer's uncontradicted testimony that he had the ATF funds in his custody provided ample evidence from which a rational jury could conclude that this element of the statute was satisfied. *See United States v. Nevils*, 598 F.3d 1158, 1163–65 (9th Cir. 2010) (en banc).

Finally, Mobley contends that the evidence does not support his conspiracy conviction under the general conspiracy statute, 18 U.S.C. § 371, which makes it unlawful to conspire "to commit any offense against the United

States." The conspiracy count charged Mobley with conspiring to commit the two substantive offenses charged in the indictment: assault on a federal officer in violation of § 111(b); and robbery of mail, money, or other property belonging to the United States in violation of § 2114(a). Mobley argues that the evidence established, at most, only that he conspired to assault and rob McGrew. Because McGrew was not a federal officer and did not have custody of any money or other property belonging to the United States, Mobley submits that his conspiracy conviction must be reversed.

We disagree with Mobley's argument, which turns on the scope of the conspiracy proved at trial. A rational jury could have inferred that Mobley and his cousins conspired to assault and rob not just McGrew, but anyone who accompanied him to the transaction as well. Mobley testified that when he arranged to meet McGrew at the Chevy's restaurant, McGrew said he would have one other person with him. So Agent Palmer's presence in the car, at least, was no surprise. Perhaps even more telling, after Mobley got in the car and drew the TEC-9, he did not direct his assault at McGrew. Right out of the box, Mobley pointed the gun at Agent Palmer, and Hutcherson did the same with his weapon. Their demands for money were directed at Agent Palmer alone, McGrew having fled immediately after the assault on Agent Palmer began. From this evidence, the jury could reasonably have concluded that the scope of the conspirators' agreement was not limited to assaulting and robbing McGrew.

Mobley of course did not know that one of the men accompanying McGrew would turn out to be a federal officer, or that the buy money involved would turn out to be money

belonging to the United States. But the government did not need to prove Mobley's knowledge of those facts to secure a conviction under § 371.

As a general rule, if knowledge of a fact necessary to establish federal jurisdiction is not required for the substantive offense, then it is not required under § 371 for a conspiracy to commit that offense either. *United States v. Feola*, 420 U.S. 671, 687, 695–96 (1975). In *Feola*, the Court held that the victim's status as a federal officer is a fact necessary to establish federal jurisdiction under § 111, but the government need not prove the defendant's knowledge of that fact in order to secure a conviction. *Id.* at 684. The Court concluded that a contrary reading of the statute would be inconsistent with Congress' purpose to accord "maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts," rather than leaving such prosecutions to the States alone. *Id.* The Court saw no unfairness in construing the statute not to require knowledge of the victim's official status because in most cases such knowledge is irrelevant to establishing the wrongfulness of the defendant's conduct. Acting with the intent to assault someone is still wrongful, even if the defendant mistakenly thought he was assaulting a private citizen. (The Court noted one exception—cases in which the defendant's "ignorance of the official status of the person assaulted or resisted negates the very existence of *mens rea*." *Id.* at 686. Because the jury rejected Mobley's self-defense claim, that exception does not apply here.) Thus, to be guilty of conspiring to assault a federal officer, Mobley did not need to know Agent Palmer's official status.

We conclude that, by the same reasoning, Mobley did not need to know that the buy money Agent Palmer had in his

custody belonged to the United States. Under § 2114(a), the federal character of the property at issue is a fact necessary to establish federal jurisdiction, but the government does not need to prove that the defendant knew the property belonged to the United States. *See United States v. Smithen*, 213 F.3d 1342, 1344 (11th Cir. 2000) (per curiam). That is true because § 2114(a)'s purpose is similar to that of § 111: Its aim is to extend maximum federal protection to a particular class of individuals, but based on their status as persons having lawful charge, control, or custody of federal property, rather than on their status as federal officers. That purpose would be undermined if the statute required proof of the defendant's knowledge of the federal character of the property involved. And, as with § 111, knowledge of the jurisdictional fact under § 2114(a) is irrelevant to establishing the wrongfulness of the defendant's conduct. An assault with the intent to rob someone of property is wrongful whether the property belongs to the federal government or someone else.

Under *Feola*, because knowledge of the federal character of the property is not required for conviction of the substantive offense under § 2114(a), such knowledge is not required to obtain a conviction under § 371 for conspiring to commit that offense. (To the extent the Seventh Circuit adopted a contrary rule in *United States v. Salgado*, 519 F.3d 411, 415 (7th Cir. 2008), we do not think that rule can be squared with *Feola*'s clear holding.) Thus, the government did not need to prove that Mobley knew the buy money Agent Palmer had in his custody belonged to the United States in order to secure a conspiracy conviction under § 371.

**AFFIRMED.**